MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347
———
(302) 658-9200
(302) 658-3989 FAX

MICHAEL J. FLYNN
(302) 351-9661
(302) 498-6217 FAX
mflynn@mnat.com

June 17, 2019

The Honorable Sherry R. Fallon
United States District Court
   for the District of Delaware
844 N. King Street, Unit 14, Room 6100
Wilmington, DE 19801-3555

      Re: *Ethanol Boosting Systems, LLC et al. v. Ford Motor Company*,
           C.A. No. 19-196 (CFC) (SRF)

Dear Judge Fallon:

      Defendant Ford Motor Company ("Ford") submits this letter to address the remaining disputes between Ford and Plaintiffs Ethanol Boosting Systems, LLC and Massachusetts Institute of Technology (collectively, "Plaintiffs") regarding the parties' proposed Protective Order. Ford's Protective Order is attached hereto as Exhibit A, and the version of the Protective Order with the disputed language is attached hereto as Exhibit B. The parties agree on all issues except two general categories, which are: (1) the extent and terms under which highly confidential source code may be printed; and (2) whether a privilege log must be served in the event a party "claws back" an inadvertent production of irrelevant or otherwise non-discoverable documents that are also subject to attorney-client privilege or work product immunity.

    **A. Ford's Proposals for Printing of Source Code are Reasonable and Appropriate in this Case**

      Plaintiffs seek access to Ford's sensitive and highly confidential source code. In anticipation that source code may be subject to discovery, the proposed Protective Order includes provisions with heightened protection for source code. Ford agrees that source code should be reviewed expeditiously with minimal expense to all parties, subject to strict protections. Ford has agreed to terms in the proposed Protective Order that are more generous than Delaware's Default Standard for Access to Source Code, including, for example, providing that up to 3,000 lines (or 50 pages) of source code may be printed, absent an objection by the producing Party (*see* Ex. A, ¶ 11(l)); omitting limitations on the number of outside counsel and increasing the number of experts who may review source code (*see* Ex. A, ¶ 11(b)); providing multiple computers for review of source code (*see* Ex. A, ¶ 11(c)); and identifying software utilities that will be loaded on the source code review computer(s) (*see* Ex. A, ¶ 11(d)).

      Ford's source code is highly sensitive and confidential, representing substantial investment. Any disclosure of electronic or printed copies beyond the limits of the Protective Order could be incredibly harmful to Ford's business. Ford believes that the needs of discovery

The Honorable Sherry R. Fallon
June 17, 2019
Page 2

in this case should be balanced with appropriate steps to prevent unintended disclosure of its confidential source code, with particular care given to the creation and dissemination of hard copy print outs. This is consistent with this Court's case law. *See generally Inventor Holdings, LLC v. Wal-Mart Stores Inc.*, C.A. No. 13-96-GMS, 2014 U.S. Dist. LEXIS 119933, *12 (D. Del. Aug. 27, 2014).

The Parties' disagreements about printing of source code are as follows:

1. Subject to the terms of the Protective Order, Ford agrees to provide a hard copy print out of source code upon request. Ex. B, ¶ 11(j). But Ford proposes that the Order should state that a party requesting printed source code may only do so if it "believe[s] in good faith [the printing] is necessary" for purposes of the case. Plaintiffs would omit any requirement for a good faith belief. *Id.* Ford believes this simple provision is appropriate to prevent unnecessary printing of swathes of its highly sensitive source code. If Plaintiffs cannot determine in good faith that printing of source code is necessary for purposes of the case, then Ford should not bear the inherent risks of inadvertent disclosure that printing its source code would entail. *See, e.g., Inventor Holdings*, 2014 U.S. Dist. LEXIS 119933, *12 (recognizing that source code poses "a heightened risk of inadvertent disclosure").

2. The agreed terms of the proposed Protective Order state that the producing Party may object within five (5) days following a request for printing of source code. *Id.* However, in the event the Parties cannot resolve the objection by agreement and the issue must be presented to the Court, the Parties disagree as to which of them shall bear the burden of showing whether source code may be printed. Ford proposes that the receiving Party should have the burden. Ford's proposal states:

> the receiving Party shall have five (5) business days to move the Court. In that circumstance, the burden will be on the receiving Party to show that the requested Source Code is necessary to understand a relevant feature of an accused product or to prepare court filings, pleadings, expert reports, or other papers, or for deposition or trial.

Ex. B, ¶ 11(j). In contrast, Plaintiffs propose to reverse the burden of showing that printing is necessary and appropriate. Plaintiffs would put the burden on the producing Party to show that printing should not be allowed. *Id.*

Ford's proposal mirrors the practice under the Delaware Default Standard for Access to Source Code, in which, absent agreement of the producing Party to print source code, an order of Court is necessary to obtain printed source code. Ford should not be required to show the absence of relevance of printed material; rather, the party seeking printing of code should bear the burden of showing that the printing is necessary. *See Inventor Holdings*, 2014 U.S. Dist. LEXIS 119933, *12 (reasoning that "because source code is extremely confidential . . . the burden should be on the party trying to convert source code to paper.") (internal quotations omitted). Plaintiffs have offered no meaningful reason to reverse the usual practice.

The Honorable Sherry R. Fallon
June 17, 2019
Page 3

      Plaintiffs' proposal is an unwarranted departure from the provisions of Paragraph 5 of the Delaware Default Standard for Access to Source Code, which states that "[s]ource code may not be printed or copies with the agreement of the producing party or further order of the court." Ford requests that it be afforded protection at least as strong as any litigant would receive under the default rule. If anything, the sensitivity of Ford's source code warrants *heightened* protection over the default rule. Plaintiffs seek, without justification, what amounts to a presumption that they are entitled to hard copy print outs of Ford's source code. Plaintiffs have not identified any reason they should not bear the burden, if the issue is presented to the Court, of showing why printing of Ford's source code should be allowed.

      In addition, Plaintiffs' proposal is unworkable and will lead to wasteful and confused briefing. Plaintiffs' proposal for the producing Party to bear the burden of moving the Court and explaining why print outs of source code are not needed is backward. The requesting Party, not the producing Party, should bear the burden of explaining to the Court why it needs the print outs of source code it has requested. In order to create a sensible and productive briefing schedule, the receiving Party should be required to move the Court and explain the need for hard copy print outs of source code. In that event, the producing Party can address the moving Party's arguments in a responsive brief.

      3.    Ford's proposed Paragraph 11(k) provides that a requesting Party may only request printing of limited portions of Source Code that are reasonably necessary for preparation of court filings, etc. Printing may not be requested merely to facilitate review of Source Code. Proposed Paragraph 11(k) states:

> If the requesting Party requests paper copies, it shall be of limited portions of Source Code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the Source Code. The producing Party may challenge the request for and the amount of Source Code requested in hard copy form. The burden shall be on the requesting Party to demonstrate that such printed portions are reasonably necessary for preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, and no more than is reasonably necessary for this limited purpose and not merely printed for the purposes of review and analysis.

This provision seeks to ensure the requirements of Paragraph 11 are not circumvented through the use of printed copies, including limitations on the persons that can conduct the review. All review and analysis of Ford's source code should be completed from the secured stand-alone computer provided by Ford, and not off-site through the use of hard copy print outs.

      4.    Ford proposes that a Party may request up to 3,000 lines (50 pages) of source code to be printed, subject to further agreement or Court order. Ex. B, ¶ 11(l). Plaintiffs propose that a Party may request up to 250 pages of printed source code. *Id*. Ford's proposal is more than sufficient because, as previously stated above in paragraph 3, requests for printed source code should be limited to portions that are reasonably necessary for preparation of court filings,

The Honorable Sherry R. Fallon
June 17, 2019
Page 4

pleadings, etc., rather than simply for review or analysis. Given the limited purpose of hard copy print outs, it is appropriate to limit printing to 3,000 lines (50 pages), especially since the proposed order allows a Party to seek additional pages if it believes they are necessary.

### B. The Parties Should Not Be Required to Log Non-Discoverable But Otherwise Privileged or Work Product Documents That Were Inadvertently Produced But Have Been Clawed Back

The proposed Protective Order includes a claw-back provision for inadvertently produced privileged documents. The agreed language states that: "[a]ny Party that inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information or other material by promptly notifying the recipient(s)." *See* Ex. B, ¶ 15. The parties further agree that when responsive, privileged documents have been clawed back pursuant to the Protective Order, the producing party must produce a privilege log describing the basis for the privilege that is sufficient to permit the requested party to assess the claim. But the parties disagree whether the privilege log must include documents not otherwise discoverable, *e.g.*, documents that are *not relevant* to any party's claim or defense and/or proportional to the needs of the case. *Id*.

Ford proposes that the parties follow the rules that are in place in the Federal Rules of Civil Procedure. Ex. B, ¶ 15 (requiring that the parties "provid[e] a privilege log in accordance with the Federal Rules of Civil Procedure and Advisory Committee Notes."). The Federal Rules and the Advisory Committee Notes explicitly address privilege logs, including whether to include non-responsive documents. *See* Fed. R. Civ. P. 26(b)(5), Adv. Comm. Note to 1993 Ams. ("[t]he obligation to provide pertinent information concerning withheld privileged materials applies only to items "otherwise discoverable."). Accordingly, Plaintiffs' proposal to depart from the Rules and require the identification of irrelevant, non-discoverable documents on a privilege log should be rejected.

Respectfully Submitted,

*/s/ Michael J. Flynn*

Michael J. Flynn (#5333)

*Counsel for Defendant Ford Motor Company*