# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

(302) 658-9200
(302) 658-3989 FAX

Michael J. Flynn
(302) 351-9661
(302) 498-6217 FAX
mflynn@mnat.com

August 14, 2019

The Honorable Sherry R. Fallon               *VIA ELECTRONIC FILING*
United States District Court
844 North King Street
Wilmington, DE 19801

      Re:    *Ethanol Boosting Sys., LLC v. Ford Motor Co.,* C.A. No. 19-196 (CFC)(SRF)

Dear Judge Fallon,

      Defendant Ford Motor Company ("Ford") asks the Court to (1) compel Ethanol Boosting Systems, LLC ("EBS") and Massachusetts Institute of Technology ("MIT") (collectively, "Plaintiffs") to produce certain documents dated more than 6 years prior to the Complaint; and (2) prevent Plaintiffs from disclosing Ford's Confidential or Highly Confidential information to a proposed expert, Dr. Davis, unless Mr. Davis agrees not to consult or work for Ford's competitors on PFDI technology until one year after the end of this litigation, or with further agreement of the parties.

### *Documents from More than 6-Years before the Filing of the Complaint*

      The limitation on production of documents older than 6-years before the Complaint is either inapplicable or else good cause exists to overcome the limitation because such documents are relevant to at least: (i) conception and reduction to practice, including the priority date and the correct inventors of the patents; (ii) issues of validity, including whether the patents-in-suit have sufficient written description; (iii) the scope of the subject matter claimed by the patents; and (iv) Ford's estoppel defense.

      Ford requested that Plaintiffs forego the six-year date restriction for the following Requests for Production ("RFPs"): Nos. 1, 6-8, 17, 18, 23, 25, and 30-41. *See* Ex. 1. These RFPs generally include the following categories of documents:

1) Documents evidencing first conception of the claimed fuel systems;

2) Documents evidencing inventive contributions towards the claimed fuel systems;

3) Documents evidencing any statements or belief by MIT that is would not sue Ford for patent infringement;

4) Documents related to a development project between Ford and EBS that began in 2007, referred to internally by Ford as the Bobcat/Tomcat project(s); and

5) Documents in Plaintiffs' possession characterizing the features of the claimed inventions.

Plaintiffs refused to produce these documents if they are dated more than six years before the Complaint.

The Parties have an obligation to abide by the principles of Fed. R. Civ. P. 1. *See* Fed. R. Civ. P. 1 ("[The Rules] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). Likewise, the Court's Default Standard contemplates that the Parties are to cooperatively conduct discovery under Fed. R. Civ. P. 26-36. *See* Default Standard, § 1. Plaintiffs' refusal both to produce the discovery Ford seeks and to engage in a meaningful discussion with Ford about its Requests, violates these tenets.

Indeed, Plaintiffs failed to identify any undue burden or difficulty in searching for and producing the requested documents with an expanded time scope. They only argue that the Default Standard precludes such discovery. Plaintiffs' reliance on the Default Standard is improper for two reasons. First, much of the discovery Ford seeks relates to the issue of conception and reduction to practice, which the Default Standard states is not subject to the 6-year rule. *See* Default Standard, § 4(e). Second, good cause exists for the 6-year rule not to apply to documents that do not relate to conception and reduction to practice. *In re Coventry Healthcare, Inc. v. This Document Relates*, 290 F.R.D. 471, 473 (D. Md. 2013) ("where good cause is shown, discovery of any matter relevant to the subject matter involved in the action may be ordered.") (internal quotations omitted). Third, the Default Standard is not so rigid to prevent the parties from meeting their obligations under Rule 1 and for a requesting party to obtain discovery that is reasonable and proportionate to the needs of the case pursuant to Rule 26.

> a. *The Discovery Shielded by Plaintiffs Relates to the Conception/Reduction to Practice Exception*

Ford's RFP Nos. 1, 6, 17, 18, 23, 25, and 34-36 seek documents that fall squarely within the Default Standards' conception/reduction to practice exception. *See* Ex. 1, at 2-8. Documents responsive to these Requests would include, for instance, lab notebooks from the inventors related to their work on technology of the patents-in-suit; documents related to the inventors' work on a joint project with Ford on similar technology (referred to as "Bobcat"); and documents demonstrating the dates and circumstances (including who was involved) regarding the conception of the alleged invention. All such documents are relevant to the issue of conception and reduction to practice thus, the 6-year restriction does not apply. *See AbbVie Inc. v. Boehringer Ingelheim Int'l GMBH*, 2018 U.S. Dist. LEXIS 95835, at *9-10 (D. Del. June 7, 2018) ("Information that tends to contradict or disprove the existence of "conception or reduction to practice" also is "related to" those facts of consequence.").

For example, lab notebooks can evidence whether the conception of the asserted claims of the patents-in-suit came after the earliest-claimed filing date of 2004, and who contributed to the conception. The 2004 application was focused exclusively on direct injection of a fuel other than gasoline, primarily ethanol. Plaintiffs now assert that their claims cover "optimized" dual injection fuel systems. This migration away from the originally disclosed concept suggests that at some later point, someone landed on a different, allegedly inventive, concept.

That the technology claimed by the patents is different from the 2004 priority application is confirmed by demand letters that the inventors sent to Ford. An October 30, 3014 email from the inventors to Ford (*see* Complaint, D.I. 1, ¶¶ 22-25), references the original ethanol boosting

technology the inventors approached Ford about in 2005 (Ex. 2, at 1), which is the subject of their 2004 application. They go on to state that they would like to discuss "another important technology" that "involves optimized combinations of port and direct injection for gasoline engines." *Id.* In other words, this "another" technology is different from the "ethanol boosting technology." The documents that Ford now requests go to determining when and how the claimed invention migrated away from the "ethanol boosting technology" that was disclosed and claimed in 2004 to this "another" technology that did not appear in the patent filings until 2011, despite claiming priority to the 2004 filings.

Plaintiffs claim the documents sought do not relate to conception and reduction to practice for two reasons. First, because the patents-in-suit claim priority back to 2004, Plaintiffs claim that only documents before 2004 could relate to conception and reduction to practice. But this argument rings hollow because the applications that led to the issuance of the patents-in-suit were filed between the years of 2011 and 2017. Ford has asserted in this case that the patents-in-suit are not entitled to a priority date of 2004. Accordingly, Ford is entitled to discovery to investigate and develop this argument. This includes discovery from Plaintiffs on EBS' work on the Bobcat project. The Bobcat project was a collaboration between Ford and EBS on engines that have both direct and port fuel injection, *i.e.*, the type of engine claimed in the patents-in-suit. Thus, the parties' work on that project is relevant to *when* conception of the alleged invention occurred and *who* was involved in that conception. Because Ford did substantially more development work on Bobcat than the inventors and EBS, the concept of "optimized" fuel systems could easily have come from Ford, and not the inventors. Ford is entitled to discovery to investigate such arguments. Ford should not be forced to rely on Plaintiffs' own conclusory assertions of priority and inventorship but should be able to review documents in Plaintiffs' possession that bear on these issues, regardless of when they were created.

Plaintiffs also argue that Ford must prove its allegations with respect to priority and inventorship before it is entitled to discovery on these issues. This is backwards and unsupported by law. The purpose of discovery is to investigate and find evidence to support a claim or defense, not the reverse. *Jenkins v. Renzenberger Transp. Inc.*, 2018 U.S. Dist. LEXIS 223544, at *6 (D.N.J. Nov. 15, 2018) ("The discovery rules are designed to enable litigants to narrow and clarify the issues in dispute, to ascertain the facts underlying those issues[,] and to ferret out the strengths and weaknesses of an adversary's case.") (internal quotations omitted). Ford put Plaintiffs on notice that it does not believe the patents-in-suit are entitled to the earliest-claimed priority date and that it believes that Ford employees may be proper inventors. To require Ford to meet some element of proof before it obtains such discovery from Plaintiffs is nonsensical and runs counter to the purpose of discovery. As the Third Circuit has noted, "[i]t is a first principle of federal civil procedure that litigants are entitled to discovery before being put to their proof." *Alston v. Parker*, 363 F.3d 229, 233, n.6 (3d Cir. 2004).

b. Good Cause Exists to Support the Production of the Discovery Sought by Ford

Aside from conception and reduction to practice, other documents that Ford seeks are related to Plaintiffs' characterizations of the technology of the patents-in-suit, alleged benefits of that technology, and documents related to Ford's estoppel defense. Good cause exists for the 6-year restriction to not apply. *See Bradium Techs, LLC v. Microsoft Corp.*, No. 15-cv-31, D.I. 65 at 4 n.1 (D. Del. Mar. 24, 2016) (finding "good cause" to allow discovery beyond default six-year rule when the parties had prior dealings), attached as Ex. 7.

The Honorable Sherry R. Fallon
August 14, 2019
Page 4

Plaintiffs claim that the relevant filing date is 2004. Ford believes it is no earlier than 2011. Both dates are well before January 2013, the 6-year cut off. Public information confirms that for years before the 6-year cut-off, Plaintiffs characterized the technology. *See, e.g.*, Ex. 3; Ex. 4; and Ex. 5. Such statements bear on a variety of key issues, such as whether the patents should be entitled to their earliest priority date, whether the technology in the asserted claims is different from the disclosures in the original application, and the nature of the technology purportedly developed by EBS. Secondary considerations of non-obviousness such as alleged long-felt need are also implicated by pre-2013 documents.

Similarly, Ford is entitled to discovery relating to its affirmative defense of estoppel. MIT represented to Ford that it would not sue Ford on the patents-in-suit. *See* D.I. 8, at ¶¶ 30-39. One of the patents-in-suit issued in 2011, before the six-year window. Ford is entitled to discovery from Plaintiffs regarding internal discussions related to whether they intended to sue Ford. Plaintiffs have taken the unsupportable position that they do not need to provide discovery relating to Ford's estoppel defense because Ford must show reliance to prove estoppel in order to secure discovery. This conflates Ford's burden of proof with the issue of whether good cause exists for Ford to obtain discovery. Internal discussions by Plaintiffs on whether they intended to sue Ford can corroborate Ford's evidence that such statements were made to Ford, among other things. Ford should not be refused highly relevant and probative discovery simply on Plaintiffs' own say-so or on a flawed argument that Ford must first prove the element of reliance. *See Progressive Garden State Ins. Co. v. Metius*, 2019 U.S. Dist. LEXIS 57242, at *4 (D.N.J. Apr. 3, 2019) (holding that a party was "entitled to discovery to support [its] position" because its claim or defense was squarely in the case "no matter how strongly [Plaintiff] felt otherwise").

### *Ford's Objection to Plaintiffs' Disclosure of Mr. Richard Davis as an Expert*

On July 25, Plaintiffs disclosed Mr. Richard Davis as a proposed expert under ¶ 5(d) of the Protective Order. *See* Ex. 6 ("July 25, 2019 E-mail from Bill O'Connell"), at 1. Mr. Davis's 40-year work history was almost exclusively at General Motors ("GM"), one of Ford's competitors, continuing until January 31, 2019, one day after Plaintiffs filed the Complaint. Mr. Davis's CV shows no work experience or other employment after his departure from GM. The Protective Order states that an expert must not be "presently employed by the Parties hereto for purposes other than this Action; is not a competitor of Ford and, as of the time of retention, is not expected to become a competitor of Ford." D.I. 34, at ¶ 5(d)(1). In keeping with the language that Mr. Davis must not "expect to become a competitor of Ford," Ford requested that Mr. Davis refrain from working for a competitor of Ford in relation to PFDI technology for 1 year after the end of the litigation. This request was also in keeping with the Protective Order's provision that allows a Party to make an application for appropriate additional protections specific to a situation, such as where Mr. Davis has close, recent connections to the competitor. *See* D.I. 34, at ¶ 6. Plaintiffs have rejected Ford's proposal and have offered no other solution.

Ford's request is more than reasonable considering Mr. Davis's recent work history. Ford's proposal is narrowly tailored in that it does not seek to preclude Mr. Davis from any work for Ford's competitors, but only projects involving the PFDI technology that Mr. Davis would have access to by reviewing Ford's confidential documents. Therefore, Ford asks that the Court enter an Order requiring Mr. Davis to agree not to consult or work for auto or engine companies on projects relating to PFDI technology through one (1) year after final resolution of this case, before he is allowed to view Ford Confidential or Highly Confidential information.

                                                          Respectfully,

                                                          Michael Flynn (# 5333)

cc:      Clerk of Court
           All counsel of record